IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,     )<br>                                                        )<br>          Plaintiff,                         )<br>                                                        )<br>     v.                                             )<br>                                                        )<br>JOHN W. TURNER,                    )<br>                                                        )<br>          Defendant.                      ) | Case No. 10-30064 |

OPINION

RICHARD MILLS, United States District Judge:

Pending is the Defendant's Amended Motion for Compassionate Release.

I.

On November 1, 2018, the Court revoked Defendant John W. Turner's supervised release and sentenced him to a term of 24 months' imprisonment to be served consecutively to the sentence he was then serving in the custody of the Illinois Department of Corrections ("IDOC"). A one-year term of supervised release was also imposed.

At the time the Defendant filed his motion for compassionate release, he was still in IDOC custody. The Defendant was paroled on or about September 4, 2020, and according to the Inmate Locator feature on the Bureau of Prisons

1

(www.bop.gov) website, he is serving his federal sentence at Leavenworth USP with a projected parole date of April 25, 2022.

The Defendant is a 44-year old white man who reports having hypertension. The Centers for Disease Control and Prevention ("CDC") has identified hypertension as a chronic health condition that might place him at increased risk should he contract COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (last visited November 10, 2020).

The Defendant is also obese. He states he is a 6'0" and 287 lbs., resulting in a BMI of 38.9 which is obese. The CDC states that obesity places individuals at an increased risk of severe illness from the virus that causes COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (last visited November 10, 2020). The Defendant's obesity also places him in danger of developing other risk factors for COVID-19 complications. The CDC states that people who are overweight or obese are at higher risk for other chronic conditions such as high blood pressure, diabetes, and high cholesterol.

According to the BOP website, 135 inmates and two BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed November 10, 2020). There are 2,365 federal inmates and 953 BOP staff who are currently positive for COVID-19. *Id*. Currently, 16,831 inmates and 1,525 staff have recovered. *Id*.

There are 125,155 inmates at BOP-managed institutions, along with approximately 36,000 BOP staff. *Id.*

Leavenworth USP has 17 inmates and 5 staff members who are currently positive for COVID-19. *Id.* There have not been any inmate deaths at Leavenworth due to COVID-19. *Id.* The website reports that 524 inmates and 5 staff members have recovered. *Id.* Leavenworth USP has 1,567 inmates, including 252 at the Camp. www.bop.gov/locations/institutions/for (last accessed November 10, 2020).

II.

(A)

Under the First Step Act signed into law by President Trump on December 21, 2018, defendants are now authorized to file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *See* 18 U.S.C. § 3582(c)(1)(A).

At the time of his amended motion for compassionate release, the Defendant had not made a request for compassionate release to the Warden of his facility because he was not yet in federal custody. It is not clear whether he has made such a request now that he is in federal custody.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

If extraordinary and compelling circumstances are established, therefore, the Court should then consider the statutory sentencing factors. Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should consider any applicable post-offense developments under § 3553(a).

Since passage of the First Step Act, the Sentencing Guideline policy statement has not been updated to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court

should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. § 1B1.13. The policy statement provides examples of "extraordinary and compelling reasons" in the application notes. These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1 (A)-(C). It would not appear that Defendant can meet these "extraordinary and compelling reasons" which would warrant release.

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued

detention at institutions in which COVID-19 is materially affecting their operations." There have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

(B)

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020 WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). At the time of the Defendant's motion, 97 people in BOP custody had died from COVID-19. That number is now 135. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract

the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

The Defendant alleges that contracting the virus could result in serious illness, death or long-term health consequences for him. Because the danger of contracting COVID-19 while in BOP custody is real and because the Defendant is at high risk of experiencing serious complications from the disease because of his obesity and hypertension, he claims the Court may exercise its discretion to determine that this combination of factors present an extraordinary and compelling basis for a sentence reduction.

The current number of COVID-19 positive cases at Leavenworth USP (22 among inmates and staff) is concerning, though approximately one-third of the Leavenworth inmates have contracted COVID and have recovered. It is thus apparent there was a major outbreak at the prison in the last few months. As the COVID-19 numbers are rising in states across the country, the Court recognizes there could well be another serious outbreak at Leavenworth USP.

Assuming that the Defendant has exhausted his administrative remedies since he has been in BOP custody, the Court then considers whether there is an extraordinary and compelling basis for a sentence reduction. The CDC lists obesity as a condition that places the Defendant at higher risk of complications if he

contracts COVID-19, while hypertension might place him at an enhanced risk. Thus, the Defendant is at an enhanced risk due to his health conditions, particularly obesity. At this time, however, Leavenworth USP appears to be doing better than it was at preventing a serious outbreak.

Even if the Defendant were able to establish extraordinary and compelling reasons, the Court is unable to conclude that the sentencing factors of § 3553(a) warrant compassionate release. The Defendant has served approximately two months of his sentence. He has a lengthy criminal history dating back to his late teens. In this case, the Defendant pled guilty to possession of a firearm by a convicted felon and was sentenced in 2011 to 89 months imprisonment followed by two years of supervised release.

The Defendant's criminal history includes convictions for aggravated battery, burglary, armed robbery, unlawful restraint and aggravated fleeing. He committed the underlying felon in possession offense less than one year after he was paroled from the Illinois Department of Corrections.

The Defendant had been on supervised release for just over three months at the time he was arrested on state drug charges. The Violation Report provides that during that term, each of his three drug tests for which he reported was positive. He also failed to report as directed for eight tests. On April 20, 2017, he pled guilty in Mason County to possession with intent to distribute methamphetamine and was

sentenced to 8 years in the Illinois Department of Corrections. His federal supervised release was revoked in November 2018.

The Defendant has taken a number of rehabilitation and vocational classes while in IDOC or BOP custody in order to give him a better chance to succeed upon his release. While this progress is commendable, the Court finds that upon considering the applicable sentencing factors—particularly providing just punishment, affording adequate deterrence and protecting the public from further crimes of the Defendant—compassionate release is not warranted.

Based on those sentencing factors, the Defendant's *pro se* motion to reconsider the revocation judgment and order Defendant's sentence to run concurrently instead of consecutively will also be denied.

<u>Ergo</u>, Defendant John W. Turner's Amended Motion for Compassionate Release [76] is DENIED.

The Defendant's *pro se* Motion for Reconsideration of the Revocation Judgment [70] is DENIED.

The Clerk will terminate the Defendant's *pro se* Motion for Compassionate Release [71] and the Government's Motion to Dismiss [73].

ENTER: November 16, 2020

    FOR THE COURT:

        /s/ *Richard Mills*
        Richard Mills
        United States District Judge